## AGREEMENT, CONTRACT, AND LEASE

THIS AGREEMENT, made and entered into by and between __George M. Dropik__, the owner, hereinafter called the "**LESSOR**," and **Horizon Lines of Alaska, LLC**, the authorized carrier (a person or persons authorized to engage in transportation of property as a common or contract carrier under the provisions of (1) Chapters 105 and 109 of the Interstate Commerce Act or (2) Title 42, Chapter 10 of the Alaska Statutes), hereinafter called the "**LESSEE**," in consideration of the covenants herein contained.

### WITNESSETH:

1. The time and date of the beginning of this Agreement shall be __1700__ (P.) M __December 31, 2011__.

2. The time and date of the end of this Agreement shall be __2400__ (P.) M __December 31, 2012__, or upon thirty (30) days' written notice by either party or upon the mutual consent of both parties, whichever occurs first.

3. **LESSOR** will lease to **LESSEE** the following equipment.

| EQUIP TYPE | MAKE | YEAR | MOTOR NUMBER | SERIAL NUMBER | LICENSE |
|---|---|---|---|---|---|
| A. Tractor | Kenworth | 2010 |  | 1XKTD40X2AJ267274 | Temp |
| B. OTHER |  |  |  |  |  |

4. This interchange or lease shall take place at __Anchorage__, Alaska, a point at which both **LESSOR AND LESSEE** are authorized to serve.

5. It is understood that the leased equipment under this Agreement is in the exclusive possession, control, and use of the authorized carrier **LESSEE** and that the **LESSEE** assumes full responsibility in respect to the equipment it is operating to the public, the shippers, and to all State and Federal regulatory bodies or authorities.

6. The authorized carrier **LESSEE** states that before taking possession of this motor vehicle that it was inspected by one of its responsible and competent employees and that the said equipment complies with (1) Parts 393 and 396 of the Motor Carrier Safety Regulations (Rev.) pertaining to "Parts and Accessories Necessary for Safe Operation," and "Inspection and Maintenance," (49 C.F.R., Parts 393, 396); (2) all safety standards pertaining to equipment of vehicles, Title 13, Chapter 04 of the Alaska Administrative Code; (3) all applicable regulations pertaining to vehicle transporting explosives or other dangerous articles, and (4) the authorized carrier **LESSEE**'s established company equipment specifications. The **LESSEE** states that there is a copy of the authorized inspection report attached to this Agreement signed by its employee or agent making the inspection and a certification by the authorized carrier **LESSEE** that the employee making the inspection is a responsible and competent employee or agent.

7. The authorized carrier **LESSEE** agrees to properly and correctly identify the leased equipment in accordance with (1) the I.C.C. requirements (49 C.F.R., Part 1057) and (2) Title 3, Sections 64.100 and 64.500 of the Alaska Administrative Code. If identified by a removable device, the **LESSEE** agrees that it shall be on durable material such as wood, plastic or metal and bears a serial number in the **LESSEE**'s own series.

8. The authorized carrier **LESSEE** agrees to remove any identifying device on the equipment before relinquishing possession of the equipment.

9. The authorized carrier **LESSEE** agrees that before any person other than a regular employee of the authorized carrier is assigned to drive equipment operated under this lease that it will make certain that such driver is familiar with and that his employment as a driver will not result in violation of any provisions of (1) Parts 392, 393, 395 and 396 of the Motor Carrier Safety Regulations (Rev.) pertaining to "Driving of Motor Vehicles," "Parts and Accessories Necessary for Safe Operations," "Hours of Service of Drivers," and "Inspection and Maintenance," (49 C.F.R., Parts 392, 393, 395, 396) and (2) Title 13 or 14 of the Alaska Administrative Code, and to require such drivers to furnish a certificate of physical examination in accordance with Part 391 of the Motor Carrier Safety Regulations (Rev.) pertaining to "Qualifications of Drivers" or in lieu thereof a photostatic copy of the original certificate of physical examination, which shall be retained in the **LESSEE**'s file.

10. For and in consideration of the leasing of the equipment (and the services of the driver of said equipment) used, the **LESSEE** agrees to pay to the **LESSOR** the following amounts: (See Title 3, Section 64.070 of the Alaska Administrative Code)

    A. Line Drivers shall be paid $.47 per mile for a Single and $.53 per mile for a Double.

Fuel will be supplied and fuel taxes paid by Horizon Lines of Alaska, LLC.

11. **LESSEE** shall pay for all general permits, penalties or fines, detention or assessorial services incurred while equipment listed under Section 3 of this Agreement is used for **LESSEE**'s Business purposes, as well as all tolls, ferries, or special permits necessary to effect passage of the leased equipment over roads and waterways.

12. **LESSOR** shall pay for base plates and licenses and all fines and penalties that are the direct result of acts or omissions of the **LESSOR**.

13. **LESSOR** shall not be responsible for loading or unloading the property unless prior notice is given to **LESSEE** by the consignee or consignor of the property. Additional help for loading and unloading will be furnished by consignee or consignor. All compensation and requests for services of **LESSOR** is to be for the account of **LESSEE** and in accordance with the tariffs or **LESSEE** on file with the I.C.C.

14. The equipment shall be used to transport property FROM AND TO: <u>ALL POINTS AUTHORIZED UNDER CARRIER'S PERMIT</u> including pickup at point of origin and delivery at destination. **LESSOR** shall be paid within fifteen (15) days after submission of applicable delivery documents, trip report and truck lease invoice to **LESSEE.**

15. When the equipment referred to herein is used to make up a set of doubles, or unhook a set of doubles, the **LESSEE** agrees to pay to the **LESSOR** fifteen dollars ($15.00) for each function. In cases where the driver is required to standby at the customer's location, the first 2 hours are free and the truck will be compensated at the rate of $55.00 per hour thereafter. Before this will be paid, the driver must notify either the Dispatcher or the Linehaul Supervisor for approval. (Agreement for payment must be obtained from customer/processor prior to approval for standby).

16. The **LESSEE** has advances of $ __N O N E__ (amount; if no money is advanced, insert word "NONE") of the payment agreed to in Paragraph 10. The receipt of said monies is hereby acknowledged by **LESSOR**.

17. The **LESSOR** agrees to deliver to the **LESSEE** the above equipment in good running order and condition; maintain the same in good working condition, furnishing all necessary oil, tires, and repairs for the operation of said equipment and to pay all other expenses incident to such operation. Each tractor will have installed a speed control device (e.g., computerized governor) which shall restrict the vehicle to 65 MPH. Any tampering with the speed control device shall be cause for immediate termination of the equipment lease. The Lessee has the right to inspect, at any time, the speed control device to ensure the equipment is in compliance with the 65 MPH limitation.

Prior to the purchase of a tractor, or the installation of any parts or accessories that are beyond what is required to do the work (e.g., chrome accessories, enhanced or decorative lights, etc.), such equipment or accessories will be discussed with the Lessee and any costs incurred due to the installation of such parts or accessories shall be borne solely and fully by the Lessor and not covered under an insurance policy by the Lessee.

18. The exclusive possession, control and use of said equipment will be completely vested in the **LESSEE** in such a way as to be good against all the world, including the **LESSOR**: for the complete assumption of responsibility in respect to the lease by the **LESSEE**: and for the operation of said equipment to be conducted under the supervision and control of the **LESSEE**. The driver of said equipment shall be to the **LESSEE** as employee to employer and the driver shall be paid by the **LESSEE**. Proven damage to idle equipment parked on Hoirizon Lines property may be restored based on an investigative report and at the discretion of the Linehaul Manager.

19. In the event that equipment referred to herein is not in proper mechanical condition and in the opinion of the **LESSEE** is incapable of continuing the assigned trip, then the **LESSEE** shall have the authority to transfer any shipment from this equipment and handle same according to the best judgement of the **LESSEE**. It is understood that the mileage payments agreed to in Paragraph 10 shall apply only from the point of origin to the point the equipment is deemed inadequate. Should the **LESSEE** incur any additional costs in returning the driver of said equipment to the point of origin, these charges shall be deducted from the amount paid to the **LESSOR** for the use of the equipment under this Agreement.

20. Insurance for the equipment referenced under this lease will be obtained in the following amounts:

| | |
|---|---|
| Auto Liability Coverage | $1,000,000.00 |
| Uninsured Motorist Coverage | $1,000,000.00 |
| Auto Physical Damage | Based on market value at time of damage |
| Cargo Coverage | $300,000.00 (seperate deductible) |
| Double Trailer Premium | $70,000 Lessee's equipment |

Claims on any of the above coverages will be subject to a $3,000 deductible payable by the Lessor.

The Lessee shall pay the premium for such insurance up to the full amount charged for the "Good Driver Rate" based upon the Lessor obtaining 100% of the average miles driven by Lessee's Line Drivers over a 12-month period (e.g., if the average miles driven by Lessee's line drivers over a 12-month period was 100,000 miles, Lessee would pay 100% of the premium based upon the Good Driver Rate). Lessee shall pay a pro-rated portion of the premium for line drivers who fall below the Line Driver Average for a 12-month period (e.g., for a driver who drives only 50,000 miles in a 12-month period where the average line driver amount is 100,000 miles, Lesseee will pay 50% of the premium amount based on the Good Driver Rate.) The initial mileage requirement will be based upon the average miles driven by Lessee's Line Drivers during the first six (6) months of 2006 (Jan.-June). Thereafter the mileage requirement will be reviewed every six months and will be based on a full year's average miles (e.g., in January 2007, the mileage requirement will be based upon the average miles driven for all calendar months in 2006, in July 2007 the mileage requirement will be based on the average of all miles driven from July 2006 through June 2007).

Should the Lessor not qualify for the Good Driver Rate, the Lessee shall pay an amount equal to the amount required for the Good Driver Rate and the Lessor shall be responsible for any additional premium amount caused by the failure to qualify for the Good Driver Rate. Non-chargeable accidents/incidents will not be charged against the good driver rate nor be subject to deductibles.

21. If, at any time during the duration of this Agreement, the **LESSOR** is for any reason whatsoever unable or unwilling to make the above described leased equipment available for use by the **LESSEE**, is unable or unwilling to maintain said equipment in compliance with the standards set forth in Paragraphs 6 and 17 hereof, or is otherwise unable or unwilling to comply with the terms of this Agreement, said **LESSEE** may, without prejudice to any of the **LESSEE**'s other rights or remedies, terminate this Agreement forthwith.

22. **LESSOR** is not required to purchase or rent any products, equipment or services from **LESSEE**.

23. The **LESSEE** shall provide insurance coverage as specified above in paragraph 20. Lessee shall defend, indemnify and hold harmless the Lessor for any and all liabilities arising from a motor vehicle accident which exceeds the policy limits on the insurance obtained pursuant to paragraph 20. The Lessee's obligation to defend, indemnify and hold harmless the Lesssor will not apply to situations in which the motor vehicle accident was a result of an intentional act by the Lessor.

24.  Chargeable accidents will require the lessor to be responsible for insurance deductibles associated with the accident/incident while non-chargeable accident/incidents deductibles and costs shall be the responsibility of the lessee.

THE DRIVER SHALL BE QUALIFIED TO DRIVE UNDER PART 391 OF THE MOTOR CARRIER SAFETY REGULATIONS.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals this 27 day of April, 2012, at 1717 Tidewater Rd, Anchorage, Alaska.

| LESSEE: | LESSOR: |
|---|---|
| Horizon Lines of Alaska, LLC | George M. Dropik |
| BY: _[signature]_ | BY: _[signature]_ |
| TITLE: Manager, Linehaul | TITLE: Driver |
| WITNESS: Rebecca Thelus | WITNESS: Heather Russell |

AGREEMENT, CONTRACT, AND LEASE – Page 4 of 4